# In the
# United States Court of Appeals
## For the Seventh Circuit

No. 05-2355

SAFIYYAH MAALIK,

*Plaintiff-Appellant,*

*v.*

INTERNATIONAL UNION OF ELEVATOR
CONSTRUCTORS, LOCAL 2,

*Defendant-Appellee.*

Appeal from the United States District Court for the
Northern District of Illinois, Eastern Division.
No. 03 C 1514—**Matthew F. Kennelly**, *Judge.*

ARGUED JANUARY 6, 2006—DECIDED FEBRUARY 9, 2006

Before EASTERBROOK, MANION, and WOOD, *Circuit Judges.*

EASTERBROOK, *Circuit Judge.* A union of elevator workers negotiated a multi-employer collective bargaining agreement under which pay depends on classification. See http://www.iuec.org/master_agreement.asp. Senior workers, called "mechanics," train and supervise a group of learners, called "helpers." Depending on experience, helpers earn either 50% or 70% of mechanics' pay. Helpers serve an apprenticeship and may earn a mechanic's permit (and thus a substantial pay increase) after working for three years in the industry, receiving prescribed classroom instruction,

passing an examination, and obtaining on-the-job training from the master mechanics.

Safiyyah Maalik joined Local 2 of the union and was assigned to work as a helper, receiving 70% of a mechanic's pay in light of her experience. She worked for three years, took the classroom training, and passed the examination. But the union would not give her a mechanic's permit (and thus her employers could not give her a raise), because the master mechanics with whom she had worked refused to provide on-the-job training. After a bench trial in this suit against the union under Title VII of the Civil Rights Act of 1964, the district judge concluded that the mechanics had balked because Maalik is a black woman. She protested to Local 2 about the discrimination, and it did nothing to help her. Officials of the local falsely told her that there was nothing that *could* be done, but as the district judge observed the union has many tools at its disposal, including fines of up to $2,000 and the expulsion of non-cooperating mechanics.

Despite finding that Local 2's members had engaged in discrimination to which the union was at best indifferent and at worst complicit, the judge held that Maalik is not entitled to relief. This is so, he concluded, because only employers are appropriate defendants in suits under Title VII. Relying on *EEOC v. Pipefitters Local 597*, 334 F.3d 656 (7th Cir. 2003), the judge held that employers alone may be liable, because they alone control the terms and conditions of employment.

The EEOC contended in *Pipefitters* that neither the employer nor the union had done enough to prevent racial discrimination (manifested by pervasive harassment) in the working conditions at a construction site. The employer settled, leaving only the complaint about the union's nonfeasance. We held that, when the grievance concerns terms and conditions of employment, only the em-

ployer is liable, because §703(a) of Title VII, 42 U.S.C. §2000e-2(a), imposes the duty of providing nondiscriminatory terms and conditions of employment on employers only. Although a different part of the statute exposes unions to liability, see §703(c), 42 U.S.C. §2000e-2(c), we held that this clause concerns the union's role as the employees' agent (in bargaining and in implementing contracts) and that if a union "discriminates in the performance of its agency function, it violates Title VII, but not otherwise. Thus a union that refuses to accept blacks as members, or refuses to press their grievances, is guilty of discrimination. But if it merely fails to effectuate changes in the workplace—if for example it urges the company to take steps to prevent harassment and the company fails to do so—the union is not guilty of discrimination". 334 F.3d at 659.

Local 2 insists that it has not discriminated in the performance of its agency function and thus cannot be liable. That's far from clear; what was the refusal to vindicate Maalik's right to training from other union members, if not a form of discrimination in the agency role? See *Goodman v. Lukens Steel Co.*, 482 U.S. 656, 668-69 (1987) (holding that a union's refusal to grieve complaints by black members about racial discrimination violates Title VII). But we need not pursue this question because Maalik does not rely on §703(c).

Maalik invokes §703(d), 42 U.S.C. §2000e-2(d), a subsection that *Pipefitters* did not mention because it had no bearing on that dispute. Section 703(d) provides: "It shall be an unlawful employment practice for any employer, labor organization, or joint labor-management committee controlling apprenticeship or other training or retraining, including on-the-job training programs to discriminate against any individual because of his race, color, religion, sex, or national origin in admission to, or employment in, any program established to provide apprenticeship or other training." Local 2 ran a training program in cooper-

ation with elevator-repair contractors. Just as §703(a) makes employers rather than unions answerable for terms and conditions in the workplace, so §703(d) makes both employers and unions answerable for the administration of joint training and apprenticeship programs. Plenty of decisions hold unions responsible for their actions (and oversights) in the administration of training or apprenticeship programs. See, e.g., *EEOC v. Sheet Metal Workers*, 532 F.2d 821 (2d Cir. 1976); *United States v. Electrical Workers*, 428 F.2d 144 (6th Cir. 1970); *Hameed v. Bridge Workers*, 637 F.2d 506 (8th Cir. 1980); *Eldredge v. Carpenters*, 833 F.2d 1334 (9th Cir. 1987). *Pipefitters* did not disagree with these decisions; it had no occasion to discuss §703(d).

Local 2 may not have abetted the mechanics' discriminatory refusal to train Maalik, but it made a conscious decision to do nothing, thus allowing the discriminators to prevail. It did not use intra-union remedies such as fines, suspension, or expulsion, nor did it grant Maalik a mechanic's permit to make her whole and acknowledge the skills she had been able to accumulate through work as a helper and classroom study. It issued mechanic's permits to white men who were otherwise identically situated while leaving Maalik behind. As *Goodman* holds, that is a form of discrimination by Local 2 itself. See also, e.g., *EEOC v. Indiana Bell Telephone Co.*, 256 F.3d 516, 520-26 (7th Cir. 2001) (en banc).

Title VII makes both employers and unions liable for their own conduct, not that of employees or members. Thus when line employees engage in discrimination, employers are not automatically liable; only if they know (or ought to know) what is going on and choose to do nothing (or select ineffectual steps when better ones are available) are they liable. See, e.g., *Burlington Industries, Inc. v. Ellerth*, 524 U.S. 742, 759 (1998) (explaining the circumstances under which an employer's feckless responses to intentional misconduct by an employee means that the misconduct is attributed to

the firm); *Faragher v. Boca Raton*, 524 U.S. 775 (1998). Rules that *Ellerth* and *Faragher* prescribe for employers in suits under §703(a) are no less apt for unions under §703(d). Local 2 thus is not vicariously liable for the mechanics' discriminatory refusal to train Maalik, but it *is* liable for its decision to do nothing in response, a passivity that led it to grant mechanics' credentials (and thus higher pay) to many of its members while holding back Maalik because of race and sex. Cf. *Dunn v. Washington County Hospital*, 429 F.3d 689 (7th Cir. 2005) (employers may be liable for refusal to do anything about the discrimination of non-employees, such as independent contractors).

Now if Local 2 did everything that was reasonable under the circumstances, it could not be liable. As in *Goodman* and *Indiana Bell*, however, turning a blind eye to members' or employees' discrimination is not reasonable. Local 2 has tools (from fines to expulsion) and decided not to use them. It appears to take the view that its members may do as they please, and that the local's leaders won't risk a threat to reelection by taking the side of any minority or stirring up intra-membership conflict. That is no more responsible—and no more legally permissible—than an employer's declaration that its staff may run the shop any way they like, and that blacks or women whose lives are made miserable must lump it. Both managers and union officials may prefer the quiet life, but Title VII requires action.

In its brief and at oral argument, Local 2 insisted that there would have been no point in rolling out the artillery, because employers or customers may make training impossible. When the building manager at the Sears Tower contracts for routine maintenance, he may tell Otis Elevator or some other contractor (Maalik worked for several) that the building will pay for $x$ hours of labor and no more. If $x$ is too low to permit on-the-job training—or if the customer directs Otis to send only master mechanics—then helpers

won't be trained on those jobs. It is possible that by unlucky chance Maalik drew assignment after assignment in which decisions by customers or contractors ruled out training no matter what the mechanics and Local 2 did. But the law of large numbers makes this unlikely—and counsel for the union conceded at oral argument that *no* evidence in the record suggests that this occurred.

If Maalik received the same sort of assignments as other helpers, then training would be possible on some jobs, and not others, in about the same proportion, and over a multi-year period she would have received approximately the same training as other helpers. But the district judge found that she had not been trained—and the reason was race and sex discrimination by the master mechanics rather than demands by customers or employers. Local 2 does not contend that employers control who is certified as a mechanic; that decision is in the union's hands. So it had to do something in its role as manager of the training program. It chose to do nothing, and for that it is liable. The employer was liable in *Pipefitters* because §703(a) makes it responsible for terms and conditions of employment; the union is liable here because §703(d) makes it responsible for the operation of training and apprenticeship programs.

The judgment of the district court is reversed, and the case is remanded with instructions to fashion an appropriate remedy.

A true Copy:

Teste:

_____
*Clerk of the United States Court of*
*Appeals for the Seventh Circuit*