In the

# United States Court of Appeals

### For the Seventh Circuit

No. 09-1652

KENNETH T. TRUHLAR,

*Plaintiff-Appellant,*

*v.*

UNITED STATES POSTAL SERVICE, et al.,

*Defendants-Appellees.*

Appeal from the United States District Court
for the Northern District of Illinois, Eastern Division.
No. 06 C 2232—**Rebecca R. Pallmeyer,** *Judge.*

ARGUED DECEMBER 3, 2009—DECIDED APRIL 12, 2010

Before EASTERBROOK, *Chief Judge*, and MANION and EVANS, *Circuit Judges*.

EVANS, *Circuit Judge*. In 1998, Kenneth Truhlar was working as a letter carrier for the United States Postal Service in Westmont, Illinois, when a car rear-ended his mail truck, injuring his back and neck. Truhlar sought partial disability payments but failed to disclose in the disability compensation paperwork that he was earning

money playing bass guitar for a rock band called BANG!. When the Postal Service discovered the omission, it launched an investigation to determine whether he had engaged in misconduct. It ultimately concluded that he had, and in 2005, Truhlar was fired. He sued the Postal Service and his local union, John Grace Branch #825 of the National Association of Letter Carriers, under § 301 of the Labor Management Relations Act of 1947 (LMRA), 29 U.S.C. § 185, claiming that the Service breached the collective bargaining agreement by firing him without just cause and that the union breached its duty of fair representation. Truhlar's suit, which is a form of hybrid litigation, came to an end when the district court granted the defendants' motion for summary judgment. Truhlar appeals that decision.

Although the parties disagree over a number of (ultimately immaterial) details, the following facts are undisputed. In order to collect partial disability payments following his injury, Truhlar periodically submitted a Department of Labor (DOL) form called the CA-7, which includes the following question: "Have you worked outside your federal job during the period(s) [for which you are claiming disability]? (Include salaried, self-employed, commissioned, volunteer, etc.)." Truhlar responded "no" to this question or failed to answer it on 24 CA-7 forms he submitted between 2000 and 2001, despite the fact that he earned between $8,775 and $11,000 performing with BANG! during that period. After a Postal Service inspector videotaped Truhlar playing with the band, another inspector interviewed him about the discrepancy. Truhlar claimed he misunderstood the

question on the form. In June 2001, the Postal Service notified Truhlar that he was being placed on off-duty status for "failure to provide correct earning information on your Form CA-7." A local union steward filed a grievance on Truhlar's behalf, and when the grievance was denied, union representative Eric Smith appealed in accordance with the collective bargaining agreement's (CBA) three-step grievance procedure.

Meanwhile, the Postal Service continued to follow Truhlar, and in September 2001 a postal inspector issued an Investigative Memorandum finding that he "failed to report his outside employment and the subsequent income to the U.S. Department of Labor." Two months later the Postal Service issued Truhlar a notice of removal, explaining that his failure to disclose his band income on the CA-7 forms violated four provisions of the Postal Service's employee manual, including provisions prohibiting dishonest and immoral conduct. The union grieved the removal decision on Truhlar's behalf, and when the grievance was denied, Smith filed a second appeal under the CBA.

Shortly after Truhlar received the notice of removal, the DOL initiated a forfeiture action seeking repayment of the disability benefits he had received. At the time, the U.S. Attorney's office was also considering bringing criminal charges against Truhlar, and the Postal Service and Smith agreed to hold Truhlar's grievances in abeyance pending the disposition of those charges and the DOL proceedings. In May 2004, the DOL found that Truhlar knowingly omitted his band earnings from

the CA-7 forms, and it issued a decision requiring Truhlar to forfeit his disability payments. Almost a year later, Truhlar appealed the DOL's decision to the Employee Compensation Appeals Board without telling Smith. Around the same time, the U.S. Attorney's office decided not to pursue criminal charges in part because the loss amount was low and the DOL had ordered Truhlar to forfeit his disability payments.

Late in the summer of 2005, the newly appointed local postmaster, Diane Anders, called Smith to find out what was happening with Truhlar's grievances (under the CBA the Postal Service could not officially terminate Truhlar until the grievances were resolved and he remained on off-duty status during all this time). After Smith told Anders the grievances were being held in abeyance, she obtained from Postal Service Labor Relations Specialist Anthony Intoe a copy of the Investigative Memorandum and the DOL's decision finding that Truhlar knowingly failed to report his band income. Intoe incorrectly told Anders that Truhlar had not appealed the adverse DOL decision. Anders then met with Smith to discuss Truhlar's grievances and told him (based on the inaccurate information she received from Intoe) that the DOL proceedings were over. Based on his review of the Investigative Memorandum, the DOL decision, and the U.S. Attorney's rationale for declining criminal charges, Smith decided that the union should not pursue Truhlar's grievances any further. In September 2005, he notified Truhlar that his grievances had been withdrawn. With that, Anders officially terminated Truhlar's employment. Less than four months later, the

Employee Compensation Appeals Board reversed the DOL's decision. It determined that the CA-7 form "did not reasonably put [Truhlar] on notice that he had to report all earnings" and thus concluded that he was not required to repay his disability earnings.

Following the favorable outcome to his DOL appeal, and after unsuccessfully pursuing an unfair labor practice charge against John Grace Branch #825 with the National Labor Relations Board, Truhlar filed the current suit. He claimed that the Postal Service violated the CBA by firing him without just cause and that the union breached its duty of fair representation in connection with the grievance proceedings. The Postal Service and John Grace Branch #825 sought summary judgment, arguing that Truhlar's suit is untimely, and that even if it were timely he could show neither that the Postal Service breached the CBA nor that the union failed to represent him fairly. The district court determined that the suit was timely but that the Postal Service's decision to fire Truhlar was based on just cause, as the CBA defines that term. The court granted the defendants summary judgment without considering the question of fair representation.

We review de novo the district court's grant of summary judgment to the defendants. *Nemsky v. ConocoPhillips Co.*, 574 F.3d 859, 864 (7th Cir. 2009). Although national labor policy strongly favors private over judicial resolution of disputes arising under a CBA, *Republic Steel Corp. v. Maddox*, 379 U.S. 650, 652-53 (1965), § 301 of the LMRA allows a union member to seek relief in federal court when

his union breaches its duty to represent him fairly, *DelCostello v. Int'l Bhd. of Teamsters*, 462 U.S. 151, 164 (1983).[1] The idea behind § 301 is that a union member should have judicial recourse if, during the arbitration process, his union completely bungles (or intentionally sabotages) an otherwise meritorious grievance. *Bell v. DaimlerChrysler Corp.*, 547 F.3d 796, 804 (7th Cir. 2008). Truhlar's hybrid claims against the union and the Postal Service "are inextricably interdependent"; in order to recover from either he must prevail against both. *DelCostello*, 462 U.S. at 164-65 (citation omitted). In other words, to avoid summary judgment, Truhlar must show both that John Grace Branch #825 breached its duty to represent him fairly in pursuing his grievances and that the Postal Service violated the CBA.

The district judge granted the defendants summary judgment after concluding that the Postal Service's decision to fire Truhlar did not violate the CBA. Because that conclusion doomed Truhlar's claim against the union, the district court did not discuss whether the union breached its duty of fair representation, although the union sought summary judgment on the ground that it had not. In his opening brief on appeal, Truhlar argues that the district court incorrectly concluded that the

---

[1] Technically, a hybrid suit where the employer is the Postal Service is grounded in 39 U.S.C. § 1208(b), but the law construing § 301 applies to suits against the Postal Service under § 1208(b). *See Roman v. USPS*, 821 F.2d 382, 388-89 (7th Cir. 1987); *Gibson v. USPS,* 380 F.3d 886, 888-89 & n.1 (5th Cir. 2004).

Postal Service complied with the CBA in firing him. In response, the union renews its arguments that Truhlar's suit is untimely and that he cannot show that the union breached its duty to represent him fairly. Yet, in his reply brief, Truhlar addresses neither the timeliness question nor the union's argument on the merits. At oral argument his counsel explained that he did not think he needed to brief any argument he had not lost in the district court, but it is well-established that an appellee is free to defend a judgment based on any argument raised before the court below. *See Camp v. TNT Logistics Corp.*, 553 F.3d 502, 505 (7th Cir. 2009); *Wis. Cent., Ltd. v. Shannon*, 539 F.3d 751, 761 (7th Cir. 2008). Just because the district court found it unnecessary to address all of the union's defenses does not mean Truhlar is free to ignore them now that the union has pressed them on appeal. *See United States v. Am. Ry. Express Co.*, 265 U.S. 425, 435 (1924); *see also Schering Corp. v. Ill. Antibiotics Co.*, 89 F.3d 357, 358 (7th Cir. 1996).

Truhlar's silence means that he has forfeited his arguments against the union, *see Waypoint Aviation Servs. Inc. v. Sandel Avionics, Inc.*, 469 F.3d 1071, 1073 (7th Cir. 2006), but we reviewed his submissions in the district court to determine whether there is a convincing response to the union's appellate arguments. Even assuming, as the district court found, that the suit is timely, there is no sound basis on which Truhlar could show that his union breached its duty to represent him fairly during the grievance process. A union breaches its duty of fair representation only where its actions in pursuing a member's grievance are "arbitrary, discriminatory, or in bad

faith." *Air Line Pilots Ass'n, Int'l v. O'Neill*, 499 U.S. 65, 67 (1991). In the district court, Truhlar argued that the union acted arbitrarily and in bad faith because, according to him, Smith (the union representative) did not conduct a sufficiently thorough investigation before withdrawing Truhlar's grievances. In particular, he blamed Smith for withdrawing his grievances while Truhlar's separate appeal from the adverse DOL decision was still pending and for refusing to reinstate the grievances after learning that Truhlar won his appeal from the DOL's decision.

To demonstrate that the union acted arbitrarily, Truhlar must show that "in light of the factual and legal landscape" at the time the union acted, its decision to abandon his grievances was "so far outside a wide range of reasonableness, as to be irrational." *Air Line Pilots*, 499 U.S. at 67 (internal quotation omitted). That's a high threshold, and nothing we see in Truhlar's papers in the district court convinces us that he made the necessary showing. Although it is true that the union's duty requires some minimal investigation into a member's grievance, only an investigation that reflects "an egregious disregard for union members' rights constitutes a breach of the union's duty." *Garcia v. Zenith Elecs. Corp.*, 58 F.3d 1171, 1176 (7th Cir. 1995) (quotation omitted). Here, before deciding to withdraw Truhlar's grievances, Smith met with the local postmaster, reviewed the Postal Service's Investigative Memorandum and the unfavorable DOL decision, and considered the U.S. Attorney's rationale for declining to bring criminal charges. Based on that information, Smith made a

rational decision to withdraw the grievances. Truhlar argued below that with some minimal additional investigation Smith would have learned that Truhlar appealed the DOL decision (it's unclear why he didn't just tell Smith himself), but it wasn't irrational for Smith to rely on the information conveyed by the postmaster. Even if Smith's failure to verify the information could be considered negligent, more is needed to establish a breach of the union's fiduciary duty. *See United Steelworkers of Am. v. Rawson*, 495 U.S. 362, 372-73 (1990).

As for Smith's decision not to reinstate the grievances, the union points out (without rebuttal from Truhlar) that there is no mechanism under the CBA which would have allowed Smith unilaterally to reopen a final decision. That decision must be a mutual one between the Postal Service and the national union, which is not a party to this suit. We cannot find that Smith acted arbitrarily in failing to pursue a method of relief which Truhlar has not shown was available.

Nor does anything we see in the record support Truhlar's assertions (which, as we have noted, he submitted only to the district court) that Smith acted in bad faith when he withdrew and later failed to reinstate the grievances. To show bad faith Truhlar must point to subjective evidence showing that Smith's decisions stemmed from an improper motive. *See Nemsky*, 574 F.3d at 866; *Neal v. Newspaper Holdings, Inc.*, 349 F.3d 363, 369 (7th Cir. 2003). Below Truhlar cited no such evidence but instead suggested that an improper motive is the only "reasonable explanation" for Smith's conduct. Such

unsupported speculation is insufficient to overcome a motion for summary judgment. *Argyropoulos v. City of Alton*, 539 F.3d 724, 737 (7th Cir. 2008).

Our role is not to decide with the benefit of hindsight whether Smith made the right calls—we ask only whether his decisions were made rationally and in good faith. *See Neal*, 349 F.3d at 369. Our review of the undisputed facts (in the face of Truhlar's current silence on the subject) convinces us that they were. Accordingly, Truhlar's hybrid claim cannot withstand summary judgment. The judgment of the district court is AFFIRMED.