NONPRECEDENTIAL DISPOSITION
To be cited only in accordance with
Fed. R. App. P. 32.1

# United States Court of Appeals

**For the Seventh Circuit**
**Chicago, Illinois 60604**

Submitted March 29, 2013[*]
Decided March 29, 2013

**Before**

WILLIAM J. BAUER, *Circuit Judge*

RICHARD A. POSNER, *Circuit Judge*

ANN CLAIRE WILLIAMS, *Circuit Judge*

No. 12-3590

| | |
|---|---|
| EARNEST L. JOHNSON, JR., *Plaintiff-Appellant*, | Appeal from the United States District Court for the Eastern District of Wisconsin. |
| *v.* | No. 09-CV-1094 |
| INTERNATIONAL LONGSHOREMAN'S ASSOCIATION, LOCAL 815 AFL-CIO, *Defendant-Appellee*. | Patricia J. Gorence, *Magistrate Judge*. |

**O R D E R**

Earnest Johnson, an African-American dock worker, appeals the grant of summary judgment against him in this employment-discrimination action, asserting that his union gave a favorable job to a white member with less seniority and reacted passively to his racially discriminatory workplace. We affirm the judgment.

---

[*] After examining the briefs and the record, we have concluded that oral argument is unnecessary. The appeal is thus submitted on the briefs and the record. *See* FED. R. APP. P. 34(a)(2)(C).

Johnson's union, the International Longshoreman's Association, Local 815 AFL-CIO, acts as a hiring hall for the Federal Marine Terminal of Milwaukee by referring its members to jobs as crane operators, forklift operators, and dock laborers based on seniority. In July 2007 Johnson complained to his union that a fellow union member had called him a "dumb nigger." The union investigated but declined to take further action after witnesses gave conflicting accounts of what happened. One month later the union assigned Johnson to a laborer position. After he saw a white union member driving a forklift for the duration of the shift, Johnson inferred that the union had assigned the white member—who was beneath him on the general seniority list—to the more senior position of forklift operator. Johnson spent the day lifting bags and injured his knee. His employer consequently required him to take a drug test (that he passed), but Johnson says that many white employees have not been required to take drug tests after being injured on the job. Believing that he would not have been injured if he had been given a job as a forklift operator (a job that is also higher paying), Johnson complained about the job assignments to the National Labor Relations Board. The NLRB investigated and dismissed his charge, concluding that the union had properly assigned both men to positions as laborers.

Johnson then sued his union, claiming that the union had discriminated against him based on his race in violation of Title VII of the Civil Rights Act of 1964, 42 U.S.C. §§ 2000e to 2000e-17. After discovery, the union moved for summary judgment, submitting time sheets showing that both men had been assigned as laborers and paid the same wage, and also explaining that laborers may occasionally drive forklifts.

The magistrate judge, presiding with the parties' consent, granted summary judgment to the union, concluding that the evidence that the union had assigned both men as laborers was undisputed and that Johnson had not asked the union to grieve his complaints concerning the racial slur or the allegedly discriminatory implementation of the drug-testing policy. Johnson filed a motion seeking to alter the judgment, *see* FED. R. CIV. P. 59(e), but the magistrate judge denied it as groundless.

On appeal, Johnson argues that the magistrate judge overlooked a dispute of material fact; he contends that the white employee whom he saw driving a forklift for eight hours must have been assigned to that position by the union. (Johnson also seeks to introduce new evidence, primarily that he saw a person working that day who was not listed on the time sheets, but we review the facts as they were presented to the district court. *See Payne v. Pauley*, 337 F.3d 767, 773 n.1 (7th Cir. 2003).) A union is liable under Title VII for discriminating against its members when performing union functions, such as job referrals, *see* 42 U.S.C. § 2000e–2(c)(2); *Franklin v. Sheet Metal Workers Int'l Ass'n*, 565 F.3d 508, 513 (8th Cir. 2009), but it is not liable for an employer's actions, *see Maalik v. Int'l Union of Elevator Constructors, Local 2*, 437 F.3d 650, 653 (7th Cir. 2006); *EEOC v. Pipefitters Ass'n*

*Local Union 597*, 334 F.3d 656, 659 (7th Cir. 2003). Johnson has not provided evidence that the union exercised control over job tasks after it fulfilled an employer's referral request, so he has not shown that the union, rather than his employer, picked the white worker to drive the forklift. Johnson speculates that the time sheets and payroll were altered to hide the union's wrongdoing, but his speculation is not based on personal knowledge, *see* FED. R. CIV. P. 56(c)(4); *Luster v. Ill. Dep't of Corr.*, 652 F.3d 726, 731 (7th Cir. 2011), and thus the union's evidence that the *union* gave both men the same classification is undisputed.

Johnson next argues that the magistrate judge erred in concluding that the union was not liable for the racial slur or discriminatory drug testing; the union was responsible, Johnson says, because the coworker was a union member and universal post-accident testing was part of the collective bargaining agreement. But unions become liable for others' discriminatory conduct "only if they know (or ought to know) what is going on and choose to do nothing (or select ineffectual steps when better ones are available)." *Maalik*, 437 F.3d at 653; *see Salvadori v. Franklin Sch. Dist.*, 293 F.3d 989, 998 (7th Cir. 2002); *Eliserio v. United Steelworkers of Am. Local 310*, 398 F.3d 1071, 1077 (8th Cir. 2005). Here the union investigated the racial slur, and Johnson did not mention his concerns about drug testing, so the magistrate judge correctly found that the union did not support the discriminatory conduct. *See Maalik*, 437 F.3d at 653; *Salvadori*, 293 F.3d at 998.

Johnson last contends that the magistrate judge abused her discretion by declining to recruit counsel and refusing to alter the judgment. *See* FED. R. CIV. P. 59(e). We disagree. The judge appropriately determined that Johnson did not point out an error of law or identify previously unavailable evidence that would merit reconsideration of the judgment. *See Obriecht v. Raemisch*, 517 F.3d 489, 494 (7th Cir. 2008); *Sigsworth v. City of Aurora, Ill.*, 487 F.3d 506, 511–12 (7th Cir. 2007). And she reasonably exercised her discretion in determining that Johnson, who faced the same challenges as other pro se litigants, was competent to proceed pro se. *See Romanelli v. Suliene*, 615 F.3d 847, 853–54 (7th Cir. 2010); *Pruitt v. Mote*, 503 F.3d 647, 654–55 (7th Cir. 2007) (en banc).

**AFFIRMED**.