In the

# United States Court of Appeals
## For the Seventh Circuit

No. 15-1805

BARBARA J. WELLS,

*Plaintiff-Appellant,*

*v.*

WINNEBAGO COUNTY, ILLINOIS,

*Defendant-Appellee.*

Appeal from the United States District Court for the
Northern District of Illinois, Western Division.
No. 11 C 50030 — **Frederick J. Kapala**, *Judge.*

SUBMITTED MARCH 18, 2016 — DECIDED APRIL 27, 2016

Before BAUER, EASTERBROOK, and HAMILTON, *Circuit Judges.*

EASTERBROOK, *Circuit Judge.* Barbara Wells worked as a "computer navigator" at the Winnebago County courthouse. Her job was to help litigants who lack counsel deal with the judicial system's requirements. She contends in this suit that before her departure to take what she thought would be a better job, state and county officials discriminated against her on the basis of her race (she is black) and disability (she

suffers from chronic fatigue syndrome). The district court granted summary judgment to the County, giving two reasons: first, any discrimination was attributable to state rather than county workers; second, the record would not allow a reasonable jury to find actionable discrimination.

Evidence would permit a jury to find that Winnebago County was Wells's employer, and therefore the entity responsible for complying with federal employment-discrimination statutes. The County hired and paid her, was identified on tax forms as her employer, and so on. The district judge observed that most of the decisions that Wells now labels discriminatory were made by state employees— the Circuit Court is a unit of state government. The judge thought that this made the County not responsible.

Yet employers must control the behavior of others in the workplace, so as to ensure nondiscriminatory working conditions. See, e.g., *Burlington Industries, Inc. v. Ellerth*, 524 U.S. 742 (1998); *Faragher v. Boca Raton*, 524 U.S. 775 (1998). We explained in *Dunn v. Washington County Hospital*, 429 F.3d 689, 691 (7th Cir. 2005):

> Because liability is direct rather than derivative, it makes no difference whether the person whose acts are complained of is an employee, an independent contractor, or for that matter a customer. Ability to "control" the actor plays no role. Employees are not puppets on strings; employers have an arsenal of incentives and sanctions (including discharge) that can be applied to affect conduct. It is the use (or failure to use) these options that makes an employer responsible—and in this respect independent contractors are no different from employees. Indeed, it makes no difference whether the actor is human. Suppose a patient [at a hospital] kept a macaw in his room, that the bird bit and scratched women but not men, and that the Hospital did nothing. The Hospital would be responsible for the decision to ex-

> pose women to the working conditions affected by the macaw, even though the bird (a) was not an employee, and (b) could not be controlled by reasoning or sanctions. It would be the Hospital's responsibility to protect its female employees by excluding the offending bird from its premises. This is, by the way, the norm of direct liability in private law as well: a person "can be subject to liability for harm resulting from his conduct if he is negligent or reckless in permitting, or failing to prevent, negligent or other tortious conduct by persons, whether or not his servants or agents, upon premises or with instrumentalities under his control." *Restatement (2d) of Agency* § 213(d).

See also *Maalik v. International Union of Elevator Constructors*, 437 F.3d 650 (7th Cir. 2006). If the district court's approach were right, then organizations would be able to avoid their responsibilities by dividing authority among bureaus, divisions, or agencies. The people who made the decisions could not be liable, because they would not be "employers"; and the employers could not be liable, because they let someone else make the decisions. The federal laws concerning employment discrimination cannot be so easily evaded.

The district court's second reason is stronger. Wells's job was to assist *pro se* litigants in the "Winnebago County Legal Self-Help Center." Some litigants came on their own; others were referred by judges or the clerk's office. Many expected Wells and other computer navigators to write complaints or fill in forms for them. When she explained that she was not a lawyer and could not act as their counselor—though she could use her computer to find and print forms and instructions they would find useful—people sometimes became abusive. One spat on her. Wells asked officials running the court's library and administrative staff to create a barrier between her and the public. She thought that a counter might do (public on one side, computer navigators on the other),

though she would have preferred a partition (a wall between the computer navigators and the public, with an opening, after the fashion of some banks, through which the public could speak to the navigators). She also once asked for permission to lock the door behind her when going out, so that no member of the public would be in the Self-Help Center when she returned. Wells's supervisors declined these requests and left her exposed to direct public contact. She has several other grievances as well, such as lack of access to the court's break room and a delayed raise.

She calls all of this race discrimination, but as the district court observed she produced no evidence that her race played any role. She was treated the same as the other computer navigators, who were white. She does not contend that any supervisor said anything about race or used language with racial connotations.

That leaves her claim about failure to accommodate a disability, as the Americans with Disabilities Act, 42 U.S.C. §§ 12111–17, requires. The County concedes that chronic fatigue syndrome is a disability, which can impair memory and concentration and thus aggravate anxiety. But it maintains, and the district judge concluded, that Wells had not requested a counter or partition as an accommodation of a *disability*. True, the record shows that she mentioned anxiety and at least once a month asked to be placed behind a counter or partition. But she did not link that anxiety to a qualifying disability. Many people suffer anxiety without being disabled by it. The only time she submitted medical evidence of a qualifying condition, the relief she requested was time off—which the County immediately granted. On one later occasion she requested time off to deal with her chronic fa-

tigue syndrome, this time without medical documentation, and again her request was granted. She quit before returning from this second medical leave.

Interrogatory responses that Wells filed during discovery assert that she asked for a counter or partition as an accommodation of her chronic fatigue syndrome. She does not maintain, however, that she furnished any medical evidence to back up her contention that her disability adversely affected her ability to deal with the public in an open setting—and, perhaps more to the point, she did not rely on these interrogatory responses either in the district court (when opposing summary judgment) or in her appellate briefs. Instead she has relied exclusively on the many times she told supervisors about her anxiety.

She needed to establish that the County was required to treat her references to anxiety as notices of a link between her disability and her working conditions that would set off the process of considering possible accommodations. Even in this litigation she has not offered medical evidence demonstrating that a reasonable employer would understand every mention of an employee's anxiety as a disability or understand, without medical knowledge, how anxiety and chronic fatigue syndrome are related. Certainly Wells did not provide such evidence to her employer. "[O]ur cases have consistently held that disabled employees must make their employers aware of any nonobvious, medically necessary accommodations with corroborating evidence such as a doctor's note or at least orally relaying a statement from a doctor, before an employer may be required under the ADA's reasonableness standard to provide a specific modest

accommodation". *Ekstrand v. School District of Somerset*, 583 F.3d 972, 976 (7th Cir. 2009).

In sum, the two requests that Wells expressly made on account of disability both sought time off, and both requests were granted. The record does not show that she supported any other request with the sort of medical evidence that the ADA contemplates. The district court therefore properly granted the County's motion for summary judgment.

AFFIRMED