NONPRECEDENTIAL DISPOSITION

To be cited only in accordance with Fed. R. App. P. 32.1

# United States Court of Appeals

**For the Seventh Circuit**
**Chicago, Illinois 60604**

Submitted May 13, 2016[*]
Decided May 13, 2016

**Before**

MICHAEL S. KANNE, *Circuit Judge*

DIANE S. SYKES, *Circuit Judge*

DAVID F. HAMILTON, *Circuit Judge*

No. 15-3226

| | |
|---|---|
| LEONARD D. FUQUA, | Appeal from the United States District |
| *Plaintiff-Appellant*, | Court for the Northern District of Illinois, |
| | Eastern Division. |
| *v.* | |
| | No. 12 C 6977 |
| MEGAN BRENNAN, *et al.* | |
| *Defendants-Appellees*. | Thomas M. Durkin, |
| | *Judge*. |

**O R D E R**

Leonard Fuqua, a former postal worker, appeals the district court's (1) grant of summary judgment for the Postal Service on his claim that he was discriminated against based on his age, in violation of the Age Discrimination in Employment Act of 1967, 29 U.S.C. § 633a(a), (c); (2) dismissal of his "hybrid" claims under the Postal Reorganization Act, 39 U.S.C. § 1208(b), that the United States Postal Service breached a collective bargaining agreement and that his union breached its duty of fair representation by failing to challenge the Postal Service's actions; and (3) denial of his

---

[*] After examining the briefs and record, we have concluded that oral argument is unnecessary. Thus the appeal is submitted on the briefs and record. *See* FED. R. APP. P. 34(a)(2)(C).

petition for a writ of mandamus ordering the clerk of the district court to issue a default judgment against a non-party. We affirm.

Fuqua brought this suit against the Postmaster General, the Postal Service, the National Postal Mail Handlers Union (the national union), and the National Postal Mail Handlers Union, AFL-CIO/ Local 306 (the union's local affiliate). According to his complaint (which he amended five times), Fuqua, a mail handler at the Postal Service's O'Hare Air Mail Center, faced a job reassignment in May 2010 after the Postal Service notified its employees that it was closing the facility. Employees would be transferred to other facilities through a process in which they bid on reassignments based on their seniority and position availability. Employees had to submit their bids by June 14, 2010, or be involuntarily transferred to an open position within a 1000-mile radius of the O'Hare facility. The Postal Service published on May 14 an initial list of positions available, including some positions in Gary, Indiana. As a senior employee, then age 49, Fuqua planned to bid on the positions in Gary that were closest to his home. But before he could submit his bid, the list was updated and no longer included those positions. Fuqua did not bid, and the Postal Service reassigned him to a facility in Kansas City, Missouri, and directed him to appear for work there on August 14.

Between May and August 2010, Fuqua on five occasions asked his local union to file grievances based on what he believed to be violations of the collective bargaining agreement. In his view, the Postal Service's bidding process and job transfer violated the CBA protections for senior employees. He asserted that he was a senior full-time employee who was being transferred more than 100 miles from his home, whereas junior, part-time flexible employees were being reassigned not more than 100 miles from their homes. The union never filed a grievance.

In August 2010 Fuqua did not report to his job assignment in Kansas City, and several months later, on March 26, 2011, he was fired for failure to appear.

In his fifth amended complaint (which named only the Postal Service and the union's local affiliate as defendants), Fuqua alleged hybrid claims that the Postal Service breached the collective bargaining agreement and that the local union breached its duty to represent him fairly. *See* 39 U.S.C. § 1208(b). Fuqua also alleged that the Postal Service discriminated against him based on age when it gave more favorable transfers to junior employees and transferred him, a senior employee, to a posting far from his Chicago home and then discharged him.

The district court granted the defendants' motions to dismiss the complaint in part, and denied it in part. The court dismissed Fuqua's hybrid claims as time-barred because he did not file suit until August 2012 and his claims had accrued more than a year earlier (between April 2010 and March 2011 for claims against the Postal Service, and between May and August 2010 for claims against the local union)—well-past the 6-month limitations period (borrowed from 29 U.S.C. § 185(a)). The court rejected Fuqua's proposal that it should create an extended three-year limitations period to apply to "blatant willful egregious" violations of a collective bargaining agreement. The court, however, did allow Fuqua to proceed on his ADEA claim that the Postal Service discriminated against him based on age when it transferred and then discharged him.

During the period that Fuqua was amending his complaints, an unusual procedural glitch occurred. After he filed his third amended complaint (which did not name the national union as a defendant), Fuqua sought a default judgment against the national union because it had not filed an appearance in court or responded to his complaint. Fuqua filed a proposed order of default judgment, which, for reasons not in the record, was signed by a clerk in the district court and docketed. Several days later the district court denied the request for default judgment as "inappropriate" because the national union had in fact appeared before the court, and then withdrawn its appearance, after Fuqua had removed it as a party on his most recent amended complaint. Fuqua then petitioned the court for a writ of mandamus to compel the clerk to issue a certified copy of the default judgment order she had signed. But the court also denied this petition, stating that the order had been signed "clearly in error" and that it had set the order aside for good cause.

After the close of discovery, the Postal Service moved for summary judgment on the age discrimination claim. Fuqua introduced evidence that junior, part-time flexible mail handlers received transfers to jobs in the Chicago area, which he deemed a preferable location.

The district court granted summary judgment for the Postal Service. Regarding Fuqua's claim of discriminatory termination, the court determined that Fuqua did not establish a prima facie case under the indirect method of proof because he did not produce evidence that he was meeting the Postal Service's legitimate job expectations (as he admitted that he never showed up for his job in Kansas City). As for his claim of discriminatory transfer, the court determined that Fuqua failed to make out a prima facie case because he did not present evidence that the Postal Service treated similarly situated younger employees more favorably than he. None of his evidence established

the ages of the employees. And even if Fuqua could establish a prima facie case, added the court, he failed to raise a fact question whether the Postal Service's stated reason for downsizing its workforce—a reduction in force for budgetary concerns—was pretext.

On appeal Fuqua first challenges the district court's conclusion that his hybrid claims are time-barred, and he maintains that the court should have created an equitable "remedy" in the form of a 3-year limitations term. He contends that the Postal Service's "willful, blatant, and egregious" breach of the collective bargaining agreement should not be protected by the 6-month limitations period.

The district court correctly applied the appropriate 6-month statute of limitations. Fuqua's claim arises under the Postal Reorganization Act, 39 U.S.C. § 1208(b), which is the analogue of § 301(a) of the Labor Management Relations Act, 29 U.S.C. § 185(a). *See Truhlar v. U.S. Postal Serv.*, 600 F.3d 888, 891 n.1 (7th Cir. 2010). We apply the law construing § 301 to suits against the Postal Service. *Id.; Gibson v. U.S. Postal Serv.*, 380 F.3d 886, 888–89 & 888 n.1 (5th Cir. 2004); *Trent v. Bolger*, 837 F.2d 657, 659 (4th Cir. 1988); *Abernathy v. U.S. Postal Serv.*, 740 F.2d 612, 614 (8th Cir. 1984). Thus a 6-month limitations period applies, and the clock starts running when the employee knows or should have known that "'no further action would be taken on his grievance.'" *Moultrie v. Penn Aluminum Int'l, LLC*, 766 F.3d 747, 751–52 (7th Cir. 2014) (quoting *Chapple v. Nat'l Starch & Chem. Co. & Oil*, 178 F.3d 501, 505 (7th Cir. 1999). Fuqua does not explain why he delayed filing suit against the Postal Service until August 2012, seventeen months after he was fired. As the district court explained, for his suit to have been timely, Fuqua's claims must have accrued no earlier than March 2012. But, as the district court pointed out, a reasonably diligent claimant would have known before March 2012 that the union was not filing grievances related to his August 2010 requests or March 2011 discharge. Fuqua does not explain why the delay should be excused or justify why the applicable limitations period should be extended to three years.

Fuqua next challenges the district court's conclusion that he failed to make out a prima facie case that he was transferred discriminatorily based on his age. He contends that he introduced sufficient evidence that junior, part-time flexible mail handlers were proper comparators, who received better transfer assignments than he. And, for the first time on appeal, he now asserts the ages of these employees.

But the district court was correct that Fuqua had not produced evidence that his proposed comparators were substantially younger than he, nor can we consider his new, unsubstantiated allegations that he introduced only on appeal. *See Packer v.*

*Trustees of Ind. Univ. Sch. of Med.*, 800 F.3d 843, 849 (7th Cir. 2015). At any rate, several of the named individuals are older than Fuqua, according to his new assertions. Moreover, "comparators must be similar enough that differences in their treatment cannot be explained by other variables, such as distinctions in their roles or performance histories." *Senske v. Sybase, Inc.*, 588 F.3d 501, 510 (7th Cir. 2009). Fuqua has not explained how junior, part-time flexible mail handlers are similarly situated to him—a senior, full-time mail handler. *See Filar v. Bd. of Educ. of City of Chi.*,526 F.3d 1054, 1062 (7th Cir. 2008) ("[D]ifferences in seniority will tend to make two employees dissimilar for purposes of the plaintiff's prima facie case."); *Ilhardt v. Sara Lee Corp.*, 118 F.3d 1151, 1155 (7th Cir. 1997) (full-time attorneys are not similarly situated to part-time attorneys).

Finally, Fuqua challenges the denial of his petition for a writ of mandamus and argues that the district court had no authority to set aside the default judgment. But as the district court pointed out, the national union was not subject to a default judgment because Fuqua had not named it as a defendant in his Second, Third, Fourth, or Fifth Amended Verified Complaints, each of which supersedes and voids any previous complaint that named the national union as a defendant. *See Flannery v. Record Indus. Ass'n of Am.*, 354 F.3d 632, 638 n.1 (7th Cir. 2004). He is not entitled to judgment against a non-party. *See* FED. R. CIV. P. 55(b)(1).

For the foregoing reasons, the district court's judgment is AFFIRMED.