**NONPRECEDENTIAL DISPOSITION**

To be cited only in accordance with Fed. R. App. P. 32.1

# United States Court of Appeals

**For the Seventh Circuit**
**Chicago, Illinois 60604**

Submitted October 31, 2016[*]
Decided November 1, 2016

**Before**

ILANA DIAMOND ROVNER, *Circuit Judge*

ANN CLAIRE WILLIAMS, *Circuit Judge*

DAVID F. HAMILTON, *Circuit Judge*

No. 16-2334

| | |
|---|---|
| DANIEL C. COKER, *Plaintiff-Appellant*, | Appeal from the United States District Court for the Central District of Illinois. |
| *v.* | No. 14-2093 |
| MEGAN J. BRENNAN, Postmaster General of the United States, and NATIONAL POSTAL MAIL HANDLERS UNION LOCAL 306 *Defendants-Appellees*. | Harold A. Baker, *Judge*. |

**O R D E R**

The U.S. Postal Service fired Daniel Coker as a mail handler after he accrued too many unscheduled absences. An arbitrator upheld the decision to fire him, and Coker brought this suit. He principally claims that, in firing him, the Postal Service violated an earlier settlement agreement. He also sued his union for breaching its duty to represent

---

[*] We have unanimously agreed to decide the case without oral argument because the briefs and record adequately present the facts and legal arguments, and oral argument would not significantly aid the court. *See* FED. R. APP. P. 34(a)(2)(C).

him fairly in the arbitration. After a bench trial, the district court concluded that the claims against the Postal Service lacked merit; it also granted the union summary judgment. Because the Postal Service did not breach the settlement and the union acted reasonably, we affirm the judgment.

Coker's claims were disposed of at different stages in the litigation, so we consider them separately. We start with the record developed at trial against the Postal Service and first address Coker's main claim that, in firing him, the Service violated the settlement agreement. That settlement agreement, reached in September 2010, resolved among other disputes a claim under Title VII of the Civil Rights Act of 1964, 42 U.S.C. §§ 2000e–2000e-17. The claim challenged an earlier decision by the Postal Service to fire Coker for absenteeism. In the 2010 settlement, the Postal Service promised that the "Notice of Removal and all other discipline will be rescinded and expunged" from Coker's record. It also agreed to award him annual-leave credit and pay him $30,000 in a lump sum.

New problems arose a few months after the settlement. From April 2011 until April 2012, Coker clashed with management over new and frequent unscheduled absences. In an effort to correct the absenteeism, he received the progressive discipline required in the collective bargaining agreement: first, a letter of warning, then as the absences continued, a suspension of 7 days, and later a suspension for 14 days. Finally, in April 2012, he received a notice of removal for 32 days of unscheduled absences between January and March 2012.

After Coker received this notice, his union challenged the removal through three grievance steps and arbitration. During the second grievance step, the manager of the local postal facility, Jennifer Defebaugh, reviewed his attendance records for each year going back to 2005. She reviewed these older records to evaluate Coker's contention that his absences in 2012 were the result of hostility from his current supervisors. By looking at prior records, Defebaugh could see if his attendance was better under different supervisors. It was not any better, so she denied his grievance. Later, at the arbitration, the Postal Service submitted Coker's attendance records going back to 2006. Based on his attendance history from 2011 to 2012, the arbitrator concluded that the Postal Service had good cause to fire him.

Coker unsuccessfully argued at trial that the Postal Service breached the settlement agreement by using his older attendance records in the grievance process and at the arbitration. The district judge ruled that the settlement did not prohibit the Postal Service from using these records, and in any case Coker did not show that he was

disciplined for attendance issues predating the settlement. The judge credited Defebaugh's testimony that she reviewed the pre-settlement records only to evaluate Coker's assertion that his recent absences resulted from the hostility of his new supervisors. The judge also ruled that the Service did not breach the settlement during the arbitration, though he mistakenly thought that Coker was protesting the submission of the *settlement agreement* to the arbitrator, when in fact Coker was objecting to submission of his attendance records.

On appeal Coker maintains that the Postal Service breached the settlement by reviewing his older attendance records, but he is wrong. Nothing in the settlement agreement prohibited the Postal Service, during either the grievance steps or arbitration, from consulting Coker's past attendance records. The settlement required only that the Postal Service expunge an earlier notice of removal and past discipline; it did not compel the Service to destroy or ignore Coker's record of absences. In any case, the district court permissibly found that Defebaugh reviewed the old absences, not to discipline Coker for them, but to decide whether they validated his mitigation argument about his *current* absences. *See United States v. Norris*, 640 F.3d 295, 301 (7th Cir. 2011) (decision to credit the plausible testimony of a witness "can virtually never be clear error" (quoting *Anderson v. City of Bessemer*, 470 U.S. 564, 575 (1985))). Likewise Coker points to no evidence suggesting that the Postal Service asked the arbitrator to consider Coker's pre-settlement absenteeism to justify firing him. Instead the arbitrator relied only on Coker's absences after the settlement to uphold the discharge. Thus the Postal Service did not violate the settlement.

We can quickly dispatch the two remaining claims that Coker asserted at trial. First he asserted that he faced a hostile work environment. (Two supervisors had bragged about disciplining him and management took no corrective action, and he was not placed on a list of employees seeking overtime.) But in his appellate brief Coker does not challenge the district court's finding that his work environment was not hostile, so we need not address the claim. *See Roberts v. Columbia Coll. Chi.*, 821 F.3d 855, 862 n.2 (7th Cir. 2016) (arguments not presented in opening brief are waived); *Kathrein v. City of Evanston, Ill.*, 752 F.3d 680, 689 n.6 (7th Cir. 2014) (pro se litigants are generally subject to same waiver rules as parties with counsel).

Second Coker asserted against the Postal Service a "hybrid claim" under 39 U.S.C. § 1208(b). He argued that the Service violated its collective bargaining agreement with his union by denying him due process during the arbitration. To prevail against the Postal Service on this hybrid claim, Coker had to establish first that the union breached

its duty of fair representation in the arbitration. *See DelCostello v. Int'l Bhd. of Teamsters*, 462 U.S. 151, 164–65 (1983); *Truhlar v. U.S. Postal Serv.*, 600 F.3d 888, 892 (7th Cir. 2010). As we are about to explain, the district court properly granted summary judgment for the union on this claim.

We present in the light most favorable to Coker the facts concerning his claim that the union breached its duty of fair representation at the arbitration. Coker's union advocate, Richard Coleman, decided not to submit to the arbitrator a doctor's note that the union had tendered at an earlier grievance stage. The note showed that Coker had been treated for anxiety and depression twice in March 2012. Coleman also decided against using two written statements by Coker, describing his supervisors' hostility and his personal struggles during late 2011 and early 2012. In explaining these decisions to the district court, Coleman stated that the doctor's note did not account for the full extent of Coker's absences; submitting it, he feared, might have exposed Coker to difficult questions about his overall poor attendance. And Coker's statements about his supervisor "raised claims we were not in a position to prove" and may have discouraged the arbitrator from reinstating Coker. Coleman preferred, he continued, to pursue a strategy of arguing that the Postal Service's firing was improperly punitive and Coker was ready to work.

The district court ruled that a reasonable factfinder could not conclude that the union had violated its duty of fair representation. The evidence, the judge said, showed only that the union pursued a strategy different from what Coker may have liked, not that it handled his case discriminatorily or unfairly.

The duty of fair representation requires a union "to serve the interests of all members without hostility or discrimination toward any, to exercise its discretion with complete good faith and honesty, and to avoid arbitrary conduct." *Yeftich v. Navistar, Inc.*, 722 F.3d 911, 915–16 (7th Cir. 2013) (quoting *Vaca v. Sipes*, 386 U.S. 171, 177 (1967)). To survive summary judgment, Coker needed to present evidence that the union's actions were "arbitrary, discriminatory, or in bad faith." *Truhlar*, 600 F.3d at 892 (quoting *Air Line Pilots Ass'n, Int'l v. O'Neill*, 499 U.S. 65, 67 (1991)). With no evidence of bad faith or discrimination, Coker essentially argues that the union arbitrarily decided not to submit the doctor's note and his written statements. (He also argues that the union failed to exploit what he calls discrepancies in his attendance records.) He seizes on a portion of the arbitrator's decision stating that no documents supported Coker's contentions about treatment for anxiety and little evidence showed hostility from his supervisor.

On this record, though, a reasonable factfinder would not conclude that the union's representation was arbitrary. A union acts arbitrarily only when its decisions are "so far outside a wide range of reasonableness, as to be irrational." *Truhlar*, 600 F.3d at 892 (quoting *Air Line Pilots*, 499 U.S. at 67). Although in hindsight the doctor's note may have helped Coker's case, the union rationally decided that the note might backfire by leaving too much of Coker's long history of unscheduled absences unexplained. The union also reasonably feared that Coker's statements conceding struggles with management would detract from its strategy of portraying Coker as ready to resume work and the Postal Service as punitive. These decisions, even if wrong in hindsight, were at most nothing more than negligent, and more than negligence is required to establish a breach. *See id*. at 893. Finally Coker does not explain how any supposed discrepancies in his attendance records would have altered the conclusion that his absences were unscheduled, which was the basis for his discharge. Moreover, although he sent these records to the union several months before the arbitration with an inquiry about discrepancies, he never raised the topic with Coleman when they strategized for the arbitration. The union thus cannot be faulted for not developing the issue.

Accordingly we AFFIRM the judgment.