**NONPRECEDENTIAL DISPOSITION**

To be cited only in accordance with Fed. R. App. P. 32.1

# United States Court of Appeals

**For the Seventh Circuit**
**Chicago, Illinois 60604**

Submitted April 23, 2019[*]
Decided April 24, 2019

**Before**

MICHAEL S. KANNE, *Circuit Judge*

DAVID F. HAMILTON, *Circuit Judge*

AMY C. BARRETT, *Circuit Judge*

No. 18-3230

| | |
|---|---|
| KENNETH MOTLEY,<br>    *Plaintiff-Appellant*, | Appeal from the United States District Court for the Northern District of Illinois, Eastern Division. |
| *v.* | No. 16-CV-06642 |
| IAMAW DISTRICT LODGE 141,<br>    *Defendant-Appellee*. | John Robert Blakey,<br>*Judge*. |

**O R D E R**

Kenneth Motley, a ramp serviceman at United Airlines from 1999 until 2015, sued his former union for racial discrimination under Title VII of the Civil Rights Act, 42 U.S.C. § 2000e-2(c)(1), after it decided not to arbitrate his discharge. The district court entered summary judgment for the union. Motley has not identified any evidence that suggests that racial animus motivated the union's decision, so we affirm the judgment.

---

[*] We have agreed to decide the case without oral argument because the briefs and record adequately present the facts and legal arguments, and oral argument would not significantly aid the court. FED. R. APP. P. 34(a)(2)(C).

After working for United Airlines for sixteen years, Motley was fired for what the company deemed "egregiously rude and aggressive behavior" toward a customer. While on medical leave, Motley used employee travel privileges to fly from Chicago to Oklahoma City—a flight on which he had a verbal altercation with a female passenger seated next to him. The passenger had become upset over Motley's indifference to a medical emergency happening elsewhere on the plane. She complained to United that Motley called her a "fucking white bitch," texted someone on his phone that he wanted to "lay [her] out," and otherwise made her feel unsafe. United's policies prohibit employees from using "aggressive or threatening behavior" that does not reflect favorably on the company.

At the request of United and the union, Motley wrote a statement about the incident. He said that the passenger had called him an "asshole," "grabbed [his] coat[,] … and plopped it on [his] side of the seat hitting [him] three times." Motley admitted that he responded, "Lady, don't you ever put your fucking hands on me again!"

United also received statements from others who had contact with the two of them. A flight attendant relayed the passenger's comment that Motley had called her a "nice, white bitch" and reported that she moved the passenger away from Motley to defuse the situation. A taxi driver who coincidentally drove Motley to his hotel after the flight and then drove the passenger to hers (only two taxi drivers were working at the airport that night) stated that Motley was "obnoxious" on the ride, using "explicit and demeaning words" to describe the passenger, and that the passenger told him that Motley had been "vulgar" and "threaten[ing]."

Under a collective bargaining agreement, Motley's discharge was subject to a grievance-review procedure. First, an investigatory meeting was held to discuss the proposed discipline. Motley's union members challenged the veracity of witness statements and argued that the passenger may have been racist against Motley because he is African-American. But the hearing officer found that Motley's firing was justified by his "egregious," "disrespectful," "intimidating," and "threatening" behavior toward a customer. The union appealed to the next level of review, at which stage Motley was represented by Erik Stenberg, the union's assistant general chairman, who asked for leniency and said that the passenger had a bad perception of Motley. United, however, denied Motley's appeal because he had admitted using "explicit language and aggressive behavior."

Stenberg then conferred with other union representatives to consider whether to appeal Motley's case to arbitration. They decided not to, concluding that the union would have no chance of prevailing at arbitration based on the following facts: Motley's admissions that he cursed at the passenger and made threatening statements, a detailed statement from the passenger as well as corroborating statements from other witnesses, and Stenberg's opinion that Motley's use of flying privileges while on medical leave would look bad. At his deposition, Stenberg described Motley as "the aggressor" in the situation. Stenberg added in a declaration that the decision not to arbitrate was based on the merits of Motley's case and had nothing to do with his race.

Motley then brought this suit, asserting that the union declined to take his case to arbitration because of his race, in violation of Title VII. After the union moved for summary judgment, the district court recruited counsel to help Motley respond to the union's motion, and postponed ruling so that he could conduct further discovery.

The district court ultimately entered summary judgment for the union. First, applying the burden-shifting approach adopted in *McDonnell Douglas Corp. v. Green*, 411 U.S. 792 (1973), the court explained that Motley presented neither direct evidence of discrimination nor evidence sufficient to establish a prima facie case of discrimination—specifically he could not identify any similarly situated employees who had been treated more favorably than he had. Even under the holistic approach set forth in *Ortiz v. Werner Enters., Inc.*, 834 F.3d 760, 763 (7th Cir. 2016), the court continued, Motley provided no evidence that any union representative acted on any racial animus or improper motive.

On appeal, Motley points to two facts that, he believes, reflect racial animus on the union's part. He argues that the union's racial animus may be inferred from its decision—when declining to take his appeal to arbitration—to credit the statements of corroborating witnesses over his own, and from Stenberg's deposition statement that Motley was the "aggressor" in the altercation.

To stave off summary judgment, Motley needed to present evidence from which it could be inferred that the union refused to arbitrate his grievance *because of* his race. *See Abrego v. Wilkie*, 907 F.3d 1004, 1012 (7th Cir. 2018); *Maalik v. Int'l Union of Constructors, Local 2*, 437 F.3d 650, 652 (7th Cir. 2006). But the evidence he identifies supports no such inference. First, regarding the union's acceptance of the corroborating witness statements, the record does not support his version of the facts. The union, while contesting Motley's firing in two rounds of administrative appeals, in fact

highlighted the racial undertones of the altercation. As for Stenberg's comment that Motley was the "aggressor," there is no evidence to suggest that Stenberg made this comment because of Motley's race. Although Motley may believe that Stenberg's comment demonstrated racial animus, his subjective beliefs are insufficient to create a genuine issue of material fact. *See Simpson v. Beaver Dam Cmty. Hosps., Inc.*, 780 F.3d 784, 791–94 (7th Cir. 2015).

Even if Motley had established a prima facie case of discrimination under *McDonnell Douglas*, he has not provided evidence that the union's explanation was pretextual. The union determined that arbitration would be futile based on the evidence against Motley (including his own admissions and other witnesses' statements) and the negative connotations of his flying while on medical leave, and Motley has not directed us to any evidence that suggests the union did not honestly believe the stated reasons for its decision. *See Everroad v. Scott Truck Sys., Inc.*, 604 F.3d 471, 479 (7th Cir. 2010); *Truhlar v. U.S. Postal Serv.*, 600 F.3d 888, 893 (7th Cir. 2010).

We have considered Motley's remaining arguments, and none has merit.

AFFIRMED